IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CALVIN MILONS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 19 C 50232 |
| ) | |
| SONJA NICKLAUS,[1] ) | |
| ) | |
| Warden, Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After a bench trial, a Cook County judge convicted Calvin Milons of home invasion, armed robbery, and aggravated unlawful restraint. The convictions were affirmed on direct appeal, and the Illinois Supreme Court denied his petition for leave to appeal. After exhausting his post-conviction remedies in state court, Milons has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1). For the reasons below, the Court denies his petition.

### Background

In 2012, Milons was convicted after a bench trial of home invasion, armed robbery, and aggravated unlawful restraint, for his conduct during a break-in at the apartment of Samuel Glover and his daughter, Lyntina Glover. To limit confusion, the Court will refer to the Glovers by their first names.

---

[1] Sonja Nicklaus is substituted as the respondent in this case under Rule 2(a) of the Rules Governing Section 2254 Cases.

The details of the break-in were established at trial largely through the testimony of Samuel and Lyntina. Samuel testified to the following. In June 2011, he was entering his apartment when Milons and two other men pointed a gun at him and entered his apartment. Lyntina was inside. The men asked Samuel for money, and Samuel gave Milons $60 in cash from his pocket.

Milons and the other two intruders moved Samuel and Lyntina to Samuel's bedroom. One of the men pointed a gun at Lyntina's head, and Milons demanded more money from Samuel. He responded that he did not have any more. Milons and another man then looked for money in Samuel's dresser and took some of the items they found there. Milons and the men searched Samuel's person, and Milons found $200 in his wallet. Next, Lyntina was taken to the kitchen. Milons, who remained in the bedroom with Samuel, held a gun to Samuel's head while he walked around the bedroom. Milons took two or three bottles of cologne from a dresser.

Milons and the other two intruders then tied up Lyntina and Samuel with belts. They made Samuel lie down in the front room and took Lyntina to the bathroom. The men gathered items from around the house, including a comforter set, and placed them in the front room by the door.

After the men left, Samuel was able to free himself and ran into the street to look for help. There, Samuel saw Milons, who shot at him three times. Samuel hid behind a van and waited for Milons and the other two men to walk away. When Samuel ran back to his apartment, police approached him, asking about the gunshots. He pointed in the direction of Milons and the other two men, and the police chased them. Samuel went inside to free Lyntina.

When Samuel and Lyntina came back outside, they saw several police cars, one of which held Milons. Samuel then identified Milons to the police as one of the intruders.

Testifying at Milons's trial, Lyntina described the break-in as follows. After the men entered the apartment, one of them took her to the kitchen at gunpoint and asked for money. Ten minutes later, she was taken to the bedroom, where Milons and one of the other intruders were holding Samuel. Milons then pointed a gun at Samuel's head, and another man pointed one at Lyntina's head. They threatened to kill Lyntina unless Samuel gave them money. Milons then took Lyntina's orange cell phone and some bottles of cologne. The two other men took some shoes. The intruders then tied Lyntina up with a belt, took her to the bathroom, and forced her to lie down in the bathtub. A few minutes later, Lyntina heard six gunshots outside. After a short time, Samuel untied her, and she went with him outside the building, where police had gathered. Milons stepped out of one of the police cars, and Lyntina identified him as one of the intruders.

When Milons was searched after the police chase, the following items were recovered from his person: a bag of marijuana, $85 in cash, two bottles of cologne, a bundle of pink garbage bags, and an orange cell phone. Samuel identified the bottles of cologne as having been taken from his home. And when police searched Samuel's home, they found rolls of pink garbage bags, similar to those found on Milons. In front of Samuel's building, police also found a pair of shoes and a comforter. Samuel identified those as items that were taken from his home.

Police did not find a gun on Milons's person, nor did they find a gun in the vicinity

3

of the area where he was detained and arrested. Police searched the area around Samuel's home but did not find any shell casings or bullets. No gunshot residue test was performed.

After a bench trial, a Cook County judge found that Milons had held Samuel and Lyntina at gunpoint, tied them up, and fired a gun at Samuel. The judge convicted Milons of home invasion, armed robbery, and aggravated unlawful restraint. He sentenced Milons to a thirty-year prison term.

Milons appealed, challenging the sufficiency of the evidence to support his convictions. He also challenged his sentence, arguing that the trial court improperly sentenced him based on an incomplete presentence report. On April 24, 2014, the Illinois Appellate Court rejected both arguments and affirmed Milons's convictions and sentence. Milons then filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, which that court denied on September 24, 2014.

On February 13, 2015, Milons filed a petition for post-conviction relief in Cook County circuit court, which it summarily denied. Milons appealed to the Illinois Appellate Court, which affirmed the denial. The Illinois Supreme Court denied his PLA on March 21, 2018.

On October 10, 2018, Milons filed a petition for relief from judgment in Cook County circuit court, and the court denied it on December 10, 2018. Milons did not appeal.

On September 12, 2019, Milons filed his section 2254 petition in this Court.

## Discussion

Milons has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1),

which provides relief from a state judgment that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Before turning to the merits of Milons's claims, the Court will address the threshold question of the timeliness of his petition.

**A.     Timeliness**

The state argues that the Court should dismiss Milons's petition because it is untimely. In a motion filed concurrently with his petition, Milons asked the Court to excuse his late filing. He explained that he had been diagnosed with a brain tumor, which left him unable to work on his petition for several months of the limitations period.

Under 28 U.S.C. § 2244(d)(1), a one-year limitations period applies to section 2254 petitions. This subsection provides four alternative dates on which the period begins to run, and the one relevant to Milons's case is the date on which his state judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). The one-year limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

Milons's section 2254 petition was untimely, as he filed it several months after the expiration of the limitations period. His conviction became final when the time for seeking direct review expired on December 23, 2014. *See id.* § 2244(d)(1)(A). This was the end of the ninety-day period after the Illinois Supreme Court denied the direct appeal PLA on September 24, 2014, when Milons could have petitioned the U.S. Supreme Court for a writ of certiorari. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

5

The limitations period was tolled on February 13, 2015, after fifty-two days had passed, when Milons filed his state post-conviction petition. *See* 28 U.S.C. § 2244(d)(2). The clock started again on March 21, 2018, when the Illinois Supreme Court denied Milons's PLA on post-conviction relief. *See Socha v. Boughton*, 763 F.3d 674, 678 (7th Cir. 2014) (section 2244(d)(2) tolling does not include the time for seeking certiorari from the U.S. Supreme Court on collateral review).

The limitations period was again tolled after 202 more days had run, on October 10, 2018, when Milons filed his petition for relief from judgment under 735 ILCS 5/2-1401. It was tolled until either December 10, 2018, when the circuit court denied the petition, or January 9, 2019, when the time to appeal expired. *See Crenshaw v. Butler*, No. 16 C 50231, 2017 WL 386659, at *1 (N.D. Ill. Jan. 27, 2017); *cf. Griffith v. Rednour*, 614 F.3d 328, 329-30 (7th Cir. 2010) (concluding that state post-conviction proceeding was no longer "pending" after 35-day period for filing PLA had expired, even where Illinois Supreme Court granted a request to file a late PLA). That left 111 days on the one-year clock. Thus the limitations period expired on either April 1 or April 30, 2019. The Court need not decide which of these dates should apply, because Milons did not file his section 2254 petition until September 12, 2019, more than four months after the later date.

Milons does not dispute that his filing was late; instead, he requests application of equitable tolling, which would allow him to "avoid the bar of the statute of limitations." *Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013). "A habeas petitioner is entitled to equitable tolling only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

6

timely filing.'" *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "Although not a chimera—something that exists only in the imagination . . . equitable tolling is an extraordinary remedy that is rarely granted." *Id.* (internal marks and citations omitted). "The realm of equitable tolling is a 'highly fact-dependent area' in which courts are expected to employ 'flexible standards on a case-by-case basis.'" *Socha*, 763 F.3d at 684 (quoting *Socha v. Pollard*, 621 F.3d 667, 672 (2010)).

Because the analysis of a petitioner's diligence "must be evaluated in light of the broader picture" of the conditions he was facing, the Court's analysis begins with the extraordinary circumstances element. *See Mayberry v. Dittmann*, 904 F.3d 525, 530 (7th Cir. 2018); *Socha*, 763 F.3d at 684. Physical or mental illness can qualify as an extraordinary circumstance that tolls the statute of limitations "only if the illness *in fact* prevents the sufferer . . . from understanding his legal rights and acting upon them." *Carpenter*, 840 F.3d at 872.

Milons contends that his brain tumor was an extraordinary circumstance that prevented his timely filing the section 2254 petition. He explains that he was unable to work on his petition for several months of the limitations period because of the symptoms associated with the tumor and the surgery and chemotherapy required to treat it. Milons has submitted a letter from the doctor who treated him, Dr. Stefania Maraka, a neurooncologist at the University of Illinois College of Medicine. She states that Milons's tumor was diagnosed in May 2018 and he underwent surgery to address it on May 29, 2018. Dr. Maraka also states that between August 24, 2018 and February 5, 2019, Milons was being treated with chemotherapy. According to Dr. Maraka,

7

"[d]uring his treatment, [Milons] was unable to participate in any court proceedings or other legal activities." Mot. to File a Late Habeas Corpus Due to Medical Condition, Ex. 1 (dkt. no. 3) at 2.

The state argues that Milons cannot show that his tumor prevented his timely filing, because he filed his section 2-1401 petition on October 10, 2018, which is during the period that Dr. Maraka stated that he was unable to participate in legal activities. But if one carefully examines the section 2-1401 petition, it is clear that it is a pre-prepared form that only required Milons to fill in a few blanks listing his name, the date, and case number. The fact that Milons could do this does not undermine Dr. Maraka's statements or Milons's contention that, during the relevant period, he could not carry out the more demanding task of drafting his section 2254 petition.

The Court is inclined to conclude that Milons is entitled to equitable tolling, but given the somewhat conflicting evidence, an evidentiary hearing might be needed to resolve the point definitively. The Court will bypass that, however, because—as explained below—it concludes that the claims in Milons's petition are without merit.

**B.  Merits of the section 2254 petition**

A federal court may grant relief under section 2254(d)(1) only if the state court's adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court precedent that was clearly established at the time of the adjudication. *Shoop v. Hill,* 139 S. Ct. 504, 506 (2019). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Hoglund v. Neal,* \_\_\_ F.3d \_\_\_, No. 18-2949, 2020 WL 2487600, at *9 (7th Cir. May 14, 2020)

(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Milons seeks habeas corpus relief under section 2254(d)(1) on three grounds. First, he challenges the sufficiency of the evidence to support his convictions. Second, he claims that he was improperly sentenced based on an incomplete presentence report. Third, Milons claims he received ineffective assistance of counsel at trial, because he was advised not to testify in his own defense.

### 1.  Sufficiency of the evidence

"Fourteenth Amendment due process requires that the state must present sufficient evidence to prove each element of an alleged crime" as the offense is defined under state law. *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir. 2019) (citing *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). "The state appellate court determines whether any rational trier of fact could have found the evidence sufficient; a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Id.* (quoting *Saxon v. Lashbrook*, 873 F.3d 982, 988 (7th Cir. 2017)).

In his direct appeal, Milons challenged the sufficiency of the evidence to support his convictions. He argued that Samuel and Lyntina were not credible because their accounts of the break-in were somewhat inconsistent. Milons also argued that the only corroborating evidence of his guilt was his possession, when detained by police, of certain items that had come from Samuel's apartment.

The Illinois Appellate Court rejected these arguments and determined that the evidence was sufficient to support Milons's convictions for home invasion, armed robbery, and aggravated unlawful restraint. The court's decision first set out the elements of each offense:

> A person commits home invasion when, without authority, he knowingly enters the dwelling place of another when he knows or has reason to know that one or people is present, uses force or threatens the imminent use of force upon anyone within the dwelling place, whether or not injury occurs, and personally discharges a firearm during the commission of the offense. 720 ILCS 5/122-11(a)(4) (West 2010). . . .
>
> A person commits armed robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force and he personally discharges a firearm during the commission of the offense. 720 ILCS 5/18-1, 18-2 (West 2010) . . . .
>
> [A] person commits aggravated unlawful restraint when he knowingly without legal authority detains another person while using a deadly weapon. 720 ILCS 5/10-3, 10-3.1 (West 2010) . . . .

*People v. Milons*, 2014 IL App (1st) 122949-U, ¶ 24. The court concluded that the state had established, through the testimony of Samuel and Lyntina, that Milons forcibly entered the apartment, used guns and violence, took items, and tied up Samuel and Lyntina with belts. Additionally, Samuel had identified several items found in Milons's possession as items taken from Samuel's apartment. The court ruled that, aside from the discharge-of-a-firearm element of home invasion and armed robbery, this evidence was sufficient to establish the other elements of those offenses as well as aggravated unlawful restraint. And the court ruled that Samuel's testimony that he observed Milons shoot at him was sufficient proof of the discharge of a firearm.

The appellate court rejected Milons's argument that the testimony of Samuel and Lyntina could not support his convictions because they were not credible witnesses. The court explained that the inconsistencies between their accounts of the break-in were "relatively minor" and did not raise a reasonable doubt regarding Milons's guilt. *Id.* ¶ 26. The court declined to revisit the trial court's credibility determination regarding Samuel and Lyntina. *Id.* (citing *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25, 920

10

N.E.2d 233, 240 (2009) ("[A] reviewing court will not substitute its judgment for that of the trier of fact on . . . the credibility of witnesses.")).

Next, the appellate court concluded that the following evidence was sufficient to support a finding that Milons had discharged a gun during the break-in incident: Samuel's credited testimony that Milons had a gun during the break-in and shot at him on the street and Lyntina's testimony that she saw Milons with a gun in the apartment. The court rejected Milons's argument that without physical evidence such as bullets or a gun with fingerprints, the state could not prove that Milons had fired a gun at Samuel. The court ruled that the state was not required to present corroborating physical evidence to establish this element or any of the other elements of the offenses. *Id.* ¶ 30 (citing *People v. Lee*, 376 Ill. App. 3d 951, 955, 876 N.E.2d 671, 676 (2007)).

Milons contends that the appellate court's finding that the evidence was sufficient to support his convictions was objectively unreasonable. He argues that the testimony of Samuel and Lyntina cannot support his convictions, without additional physical evidence to corroborate their testimony, because they were not credible. The Court disagrees.

First, it was objectively reasonable for the appellate court to decline to disturb the trial court's credibility determination. Even if reasonable minds could differ regarding the credibility of Samuel and Lyntina, a federal habeas court has "no license" to overturn a state trial court's credibility determinations. *See Winfield v. Dorethy*, 956 F.3d 442, 452 (7th Cir. 2020); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

Second, it was objectively reasonable for appellate court to rule that additional physical evidence was not required to support Milons's convictions. Milons

11

acknowledges that there was some physical evidence corroborating the testimony of Samuel and Lyntina: some items belonging to Samuel were found in Milons's possession when he was arrested. And Milons does not point to any authority suggesting that this, along with the largely consistent testimony of Samuel and Lyntina, was not sufficient to support his convictions.

For these reasons, the Court denies Milons's claim for relief based on the sufficiency of the evidence to support his convictions.

### 2. Sentencing error

Milons next argues that he is entitled to relief because the trial judge sentenced him based on a presentence report that did not include all of the information required under 730 ILCS 5/5-3-2. This is not a cognizable claim under section 2254(d)(1): a federal court cannot issue a writ based on a claimed error of state law. *See, e.g.*, *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015). The Court denies this claim.

### 3. Ineffective assistance of trial counsel

Milons contends that, at trial, he was denied his Sixth Amendment right to the effective assistance of counsel. He argues that his trial counsel was ineffective because she advised him not to testify, in order to avoid cross-examination. According to Milons, he chose not to testify because he believed that counsel would argue his explanation for his flight from law enforcement on the day of the break-in: he was fleeing because he had marijuana is his pocket, not because he was involved in the break-in. Counsel did not make this argument. As a result, Milons contends his defense was prejudiced by the advice not to testify and present his explanation to the trial judge.

To prevail on his ineffective assistance of counsel claim under *Strickland v.*

*Washington*, 466 U.S. 668 (1984),[2] Milons must establish deficient performance and prejudice. *See Winfield*, 956 F.3d at 451-52. Counsel's performance was deficient if the representation "fell below an objective standard of reasonableness based on prevailing norms of professional conduct." *Maier*, 912 F.3d at 1070. "In assessing counsel's performance, courts are expected to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Winfield*, 956 F.3d at 451 (quoting *Strickland*, 466 U.S. at 689). To show prejudice, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Maier*, 912 F.3d at 1070 (quoting *Strickland*, 466 U.S. at 694).

A federal court's review of an ineffective assistance of counsel claim is "doubly deferential" when it was raised and ruled on by a state court. *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014). In considering such a claim, a federal court asks "not whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

In his state post-conviction petition, Milons asserted a claim that his trial counsel interfered with his right to testify. The state trial judge summarily rejected the petition, and the Illinois Appellate Court affirmed, ruling that Milons could not establish deficient performance or prejudice.

---

[2] The *Strickland* standard governs a claim that counsel interfered with a petitioner's right to testify, whereas the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California*, 386 U.S. 18, 24 (1967), governs a claim that a court denied a petitioner his right to testify. *See Hartsfield v. Dorethy*, 949 F.3d 307, 312 (7th Cir. 2020).

Again, to prevail on his section 2254 claim, Milons must show that the state court's application of federal law was unreasonable. *Hoglund*, 2020 WL 2487600, at *9. The Illinois Appellate Court did not unreasonably apply the *Strickland* standard. First, the court explained that trial counsel's advice to Milons not to testify to avoid cross-examination was a reasonable trial strategy. Second, the court concluded that there was not a reasonable probability that the result of the proceeding would have been different if Milons had testified and presented his alternative explanation for fleeing from law enforcement. In this regard, the court pointed to the ample other evidence supporting Milons's convictions, including items from Samuel's apartment that were in Milons's possession when he was arrested and two eyewitness identifications of Milons made minutes after the break-in.

The Illinois Appellate Court reasonably determined that Milons had not satisfied the requirements of *Strickland*. *See Ruhl*, 743 F.3d at 1092. The Court denies his ineffective assistance of counsel claim.

## Conclusion

The Court directs the Clerk to substitute Sonja Nicklaus as the respondent in this case and also terminates as moot petitioner's motion to file a late petition [dkt. no. 3]. For the reasons stated above, the Court directs the Clerk to enter judgment denying the petition for a writ of habeas corpus [dkt. no. 1]. The Court declines to issue a certificate of appealability, because Milons has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that reasonable jurists could differ

over the resolution of his claims.  *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 26, 2020